UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| THOMAS CLOBES,<br>an individual,<br><br>*Plaintiff,*<br><br>v.<br><br>3M COMPANY,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)  Case No. 0:23-cv-00158-NEB-DTS<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**TO THE HONORABLE JUDGE OF THE COURT AND TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

COMES NOW Plaintiff Thomas Clobes ("Clobes" or "Plaintiff") and files the within memorandum in opposition to Defendant 3M Company's ("3M" or "Defendant") Motion to Dismiss Plaintiff's Complaint pursuant to Rule[1] 12(b)(6) (the "MTD", ECF No. 11).

---

[1] All references to "Rule" are to the Federal Rules of Civil Procedure, unless designated otherwise.

1

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To meet this standard, a plaintiff must "show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). A court's review of a Rule 12(b)(6) motion assumes all factual allegations in a complaint true. *Id.* at 595 ["[I]nferences are to be drawn in favor of the non-moving party. [citation] Twombly and Iqbal did not change this fundamental tenet of Rule 12(b)(6) practice. [citations]."]. Furthermore, Plaintiff need not demonstrate that all of the requirements for establishing a prima facie case under *McDonnell Douglas* are present at the pleading stage in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002).

"Particularly in civil rights actions the complaint should be liberally construed." *Gregory v. Dillard's, Inc.,* 494 F.3d 694, 709 (8th Cir. 2007); *see also Lillard v. Shelby County Board of Ed*. (6th Cir. 1996) 76 F.3d 716, 724; *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000) ["we have emphasized that [when reviewing dismissal under Rule 12(b)(6)], the rule of liberal construction is 'particularly important in civil rights cases.' [citation].] Defendants' Motion to Dismiss does not come close to meeting the high standard required to dismiss Plaintiff's claims, most of which arise from civil rights violations, at the pleading stage.

In the event this Court finds that any of Plaintiffs' claims are insufficiently pled, Plaintiffs respectfully request leave to amend to correct any such insufficiencies as "the decision

of whether to allow a plaintiff leave to amend a complaint is within the district court's discretion." *Cornelia I. Crowell GST Trust v. Possis Medical, Inc.,* 519 F.3d 778, 781 (8th Cir. 2008); *National Council of La Raza v. Chegavske,* 800 F.3d 1032, 1041 (9th Cir. 2015); *Davoodi v. Austin Independent School Dist*. 755 F.3d 307, 310 (5th Cir. 2014).

## I.   MR. CLOBES HAS SUFFICIENTLY ALLEGED CLAIMS FOR RELIGIOUS DISCRIMINATION UNDER TITLE VII AND THE MHRA

Defendant seeks to dismiss Plaintiff's claims for religious discrimination on the grounds that he was not subjected to an adverse employment action and that Plaintiff's sincere religious beliefs were irrelevant to 3M's discriminatory conduct.

### A. Mr. Clobes Was Subjected to An Adverse Employment Action

To establish a prima facie case of religious discrimination under Title VII, a plaintiff must show: "(1) []he is a member of a protected class because of [his] religious beliefs, (2) []he met [his] employer's legitimate expectations, (3) []he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 886 (8th Cir. 2015). Similarly, the MHRA requires a plaintiff to prove: "(1) the plaintiff was discriminated against with respect to her employment or the plaintiff was discharged, (2) the plaintiff's religion was a contributing factor in the discriminatory act or discharge, and (3) the plaintiff suffered damage as a direct result." *Id.* at 887. For purposes of a Title VII discrimination claim, an adverse employment action is "a tangible change in working conditions that produces a material employment disadvantage." *Delgado v. GGNSC Grand Island Lakeview LLC*, 259 F. Supp. 3d 991, 1005 (D. Neb. 2017) (quoting *Wedow v. City of Kan. City*, 442 F.3d 661, 671 (8th Cir. 2006)).

Mr. Clobes has sufficiently demonstrated that he was subject to an adverse employment action. Under Title VII of the Civil Rights Act of 1964, "[i]t shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against

any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is clear that although the statute mentions specific employment decisions with immediate consequences, the scope of the prohibition " 'is not limited to "economic" or "tangible" discrimination,' " and that it covers more than " 'terms' and 'conditions' in the narrow contractual sense." *Faragher v. City of Boca Raton,* 524 U.S. 775, 786, 118 S. Ct. 2275, 2282–83, 141 L. Ed. 2d 662 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 474 U.S. 1047, 106 S. Ct. 780, 88 L. Ed. 2d 759 (1986)).

Mr. Clobes was subjected to consistent harassment and coercion to receive the COVID-19 vaccine, despite 3M's full knowledge of his sincere religious objections. This type of employer conduct has yielded its own cause of action under Title VII prohibiting harassment or creating a hostile work environment. Mr. Clobes has also experienced an adverse employment action by being forced to endure disparate policies based on his vaccination status. Unvaccinated individuals were mandated to continue to wear masks in the workplace even though the requirement had been lifted for vaccinated employees. This type of policy not only revealed Plaintiff's private medical information to his coworkers, but ostracized and punished Plaintiff. Therefore, Mr. Clobes was subject to adverse employment action: namely harassment for refusing to capitulate to 3M's policy due to his religious beliefs and being subjected to discriminatory policies.

### B. Mr. Clobes Has Sufficiently Pleaded Facts Giving Rise to an Inference of Discrimination

Mr. Clobes' decision to refrain from taking the COVID-19 vaccine is directly tied to his religious beliefs, as 3M was made fully aware through Plaintiff's exemption request and further communication. At this pleading stage, Plaintiff cannot attest to 3M's justification for refusing other exemption requests and on what grounds they were sought, nor is Plaintiff required to. 3M's refusal to grant Plaintiff's religious exemption, combined with the continued coercion and harassment to become fully vaccinated

under threat of termination, is sufficient to demonstrate that there is more than a "sheer possibility" that Defendant discriminated against Mr. Clobes on the basis of his sincere religious beliefs.

## II. MR. CLOBES HAS SUFFICIENTLY ALLEGED CLAIMS FOR HARASSMENT UNDER TITLE VII AND THE MHRA

Mr. Clobes has also brought a claim for discrimination due to a hostile work environment and harassment on the basis of religion. Mr. Clobes has sufficiently pleaded these claims to succeed at the pleadings stage on a hostile work environment theory.

Title VII extends the promise that no one should be subject to a discriminatorily hostile work environment. In order to demonstrate that he suffered from a discriminatorily hostile or abusive work environment, Mr. Clobes must show that he "[1] belongs to a protected group, [2] that []he was subjected to unwelcome harassment, [3] that the harassment occurred due to [his] protected group status, [4] that the harassment affected a term, condition, or privilege of [his] employment, and that [Defendant] either knew or should have known of the harassment but failed to take proper action." *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1077 (8th Cir. 2006). Plaintiff satisfies each of the aforementioned elements.

### A. The Harassment Experienced By Mr. Clobes Was Directly Tied To His Sincere Religious Objections to the COVID-19 Vaccine

First, Mr. Cloves has demonstrated that the harassment he experienced was clearly linked to his sincere religious beliefs, and therefore his status as a member of a protected group. Mr. Clobes vaccination status was inherently tied to his religious objections to the COVID-19 vaccine such that harassment on the basis of one is harassment on the basis of the other. Mr. Clobes iterates in his complaint that he submitted a religious accommodation and exemption request where he outlined his objections to the vaccine. Compl., at ¶ 14. By doing so, 3M was put on direct notice of Mr. Clobes religious beliefs and justification for refusing to take the mRNA injection. Plaintiff even provided

5

additional information articulating his religious objections in his answers to 3M's follow-up inquiries to his exemption request. Compl., at ¶ 22. Despite this knowledge, 3M still subjected continuous coercion to receiving the vaccine to such an extent that he suffered emotional trauma and stress. Compl., at ¶¶ 18, 20.

Mr. Clobes informed 3M of his religious conflict with its COVID-19 vaccine mandate on November 18, 2021. 3M's mandate was not lifted until December 10, 2021. As such, Mr. Clobes was subject to coercion and harassment to take the vaccine for several weeks at the hands of his supervisors at 3M.

### B. 3M Company Engaged In Conduct That Created A Hostile Work Environment for Mr. Clobes

3M contends that Mr. Clobes has failed to allege such severe or pervasive conduct such that he endured a "hostile work environment." MTD, at p. 11. However, it is clear that when employers engage in coercive and pressuring activity such as 3M did that causes distress and harms the psychological well-being of an employee, such conduct is sufficient to satisfy the fourth element of a *prima facie* case of harassment which requires that the harassment affected a term, condition, or privilege of his employment.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "To be sufficiently objectively severe or pervasive to be actionable, the environment must be such that a reasonable person in the plaintiff's position, considering 'all the circumstances' would find it hostile or abusive." *Leichliter v. The Des Moines Reg.*, 617 F. Supp. 2d 818, 827 (S.D. Iowa 2009) (citing *Harris,* 510 U.S. at 23, 114 S.Ct. 367)).

Certainly, Title VII bars conduct that would seriously affect a reasonable person's psychological well-being, but the statute is not limited to such conduct. If a work environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993). Harassment need not be so extreme that it produces tangible effects on job performance or psychological well-being to be actionable. *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999).

"Title VII comes into play before the harassing conduct leads to a nervous breakdown." *Harris v. Forklift Sys.*, Inc., 510 U.S. 17, 22, 114 S. Ct. 367, 370–71, 126 L. Ed. 2d 295 (1993). A hostile work environment, "even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Id.*

The harassment that Mr. Clobes experienced surpasses this threshhold as it did cause him psychological injury. As alleged in his Complaint, Mr. Clobes was harassed daily by email and loudspeaker announcements while at work to receive the COVID-19 vaccine. Compl., at ¶ 18. Plaintiff had formerly expressed to 3M that part of his religious objection to the vaccine stemmed from his own granddaughter's vaccine-induced death. Plaintiff articulated in his complaint that he communicated to 3M in his exemption questionnaire: "Because of my personal family tragedy I have prayed to God and his guidance has [led] me to hold a sincere and genuine belief that this vaccine and any vaccine are a danger to my health and mental well-being." Compl., at ¶ 22. 3M was fully aware of Plaintiff's distress, as Plaintiff shared this story with 3M via both the exemption process and via email. What's more, Mr. Clobes was forced to reveal his vaccination status to his coworkers due to 3M's policy that unvaccinated workers only were required to wear masks, while vaccinated employees were not required to submit to such a requirement.

7

Mr. Clobes has demonstrated that he has sincere religious beliefs that prevent him from receiving the COVID-19 vaccine, he was subjected to unwelcome harassment at the hands of 3M due to his religious beliefs, such harassment caused psychological harm and created a hostile working environment, and Defendant was fully aware of Mr. Clobes' sincere objections and distress, and yet continued to engage in pressuring and coercive conduct towards Mr. Clobes. Mr. Clobes has established, at this first pleading stage, that he was subjected to religious discrimination and a hostile work environment as is prohibited under both Title VII and the MHRA. As such, this Court should deny 3M's motion to dismiss Plaintiff's claims for religious harassment.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's Motion to Dismiss pursuant to Rule 12(b)(6). Alternatively, should this Court deem any claims insufficiently alleged, Plaintiff seeks leave to amend his complaint to cure any deficiencies.

DATED: March 27, 2023

Respectfully submitted,

*/s/ Lexis Anderson*
Lexis Anderson, Esq.
*Admitted pro hac vice*
Texas Bar No. 24127016
Robert E. Barnes, Esq.
Tennessee BPR No. 020617
*Admitted pro hac vice*
BARNES LAW
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (310) 510-6211
Facsimile: (310) 510-6225
Email: lexisanderson@barneslawllp.com
Email: robertbarnes@barneslawllp.com

Francis Herbert White III, Esq.
Minn. Atty. #0396779
Francis White Law, PLLC
8362 Tamarack Village, Suite 119-220
Woodbury, MN 55125
(651) 829-1431 (office)
francis.white@franciswhitelaw.com

Attorneys for Plaintiff THOMAS CLOBES

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically on March 27, 2023. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Lexis Anderson
Lexis Anderson
Admitted *Pro Hac Vice*